UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERTO HERNANDEZ,
     Petitioner,

v.                                Case No. 8:20-cv-293-KKM-MRM

SECRETARY, DEPARTMENT
OF CORRECTIONS,
     Respondent.
_____

## ORDER

     Roberto Hernandez, a Florida prisoner, timely[1] filed a pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 based on alleged insufficient evidence of guilt and alleged failures of his trial counsel. (Doc. 1.) Having considered the petition, (*id.*), the response in opposition, (Doc. 13), and the reply, (Doc. 19), the petition is denied. Because reasonable jurists would not disagree, Hernandez is also not entitled to a certificate of appealability.

---

[1] Hernandez's convictions and sentences were affirmed on March 19, 2010. (Doc. 14-3, Ex. 4.) His judgment became final 90 days later, on June 17, 2010, when the time to petition the Supreme Court of the United States for a writ of certiorari expired. *See Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002). The limitation period ran untolled for 297 days until Hernandez filed his postconviction motion on April 11, 2011. (Doc. 14-3, Ex. 6, p. 56.) The motion remained pending until issuance of the state appellate court's mandate on January 15, 2020. (Doc. 14-5, Ex. 12.) Another 20 days of untolled time passed before Hernandez filed his § 2254 petition on February 5, 2020. (Doc. 1, p. 23.) A total of 317 days of untolled time elapsed. Hernandez's petition is therefore timely.

## I.   <u>BACKGROUND</u>

### A. Procedural Background

Hernandez was tried jointly in state court with his co-defendant, Alberto Gonzalez. The jury convicted Hernandez of two counts of robbery with a firearm, two counts of kidnapping with a firearm, one count of extortion, and one count of theft. (Doc. 14-2, Ex. 1, pp. 95-99.) The state trial court sentenced him to an overall term of 40 years in prison. (*Id.*, pp. 115-29.) The state appellate court per curiam affirmed the convictions and sentences. (Doc. 14-3, Ex. 4.)

Hernandez moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Ex. 6, pp. 56-97.) The state court denied the motion. (*Id.*, pp. 200-209, 335-41.) The state court partially granted Hernandez's motion for rehearing. (*Id.*, pp. 352-54.) After reconsidering several of his claims, the state court again denied relief. (Doc. 14-4, Ex. 6, pp. 682-722.) The state appellate court per curiam affirmed. (Doc. 14-5, Ex. 11.)

### B. Factual Background[2]

---

[2] The factual background is based on the trial transcript.

Kirenia Roque[3] and Pedro Cabo, a married couple, owned and worked at a medical clinic. (Doc. 14-2, Ex. 1b, pp. 207-08.) On September 4, 2007, Cabo stayed home sick but Roque went to work. (*Id.*, p. 208.) As she was driving home around 8:30 p.m., a car pulled out of a driveway and hit her car. (*Id.*, pp. 208-09.) Hernandez exited the other car and pointed a gun at her. (*Id.*, pp. 210-12.) Several other men appeared; all but one were masked, and they all had guns. (*Id.*, pp. 210-11, 213.) Hernandez told Roque that this was an assault, that she should do what they said, and that they would kill her if she did not comply. (*Id.*, pp. 210-11.) Hernandez was not wearing a mask and Roque got a good look at him. (*Id.*, pp. 211-12.)

Roque was forced to sit in the center backseat of her car. (*Id.*, p. 214.) Alberto Gonzalez, who was not wearing a mask, was sitting to her right. (*Id.*, pp. 215-16.) Gonzalez said they were going to Roque's home and that she had to give them money or they would kill her, her husband, and their family. (*Id.*, p. 215.) Gonzalez appeared to Roque to be in charge of the group. (*Id.*) Roque heard the others call Gonzalez "Flaco," which meant "skinny person" in Spanish. (*Id.*, pp. 218-19.)

One man drove Roque's car to her house while the other vehicle followed. (*Id.*, pp. 217-18.) At some point, Gonzalez put a mask on. (*Id.*, p. 222.) When they got to her

---

[3] The trial transcript lists Roque's full last name as "Roque-Diaz." (Doc. 14-2, Ex. 1b, p. 206.) As this witness identified herself as "Kirenia Roque" when she testified at trial and the record primarily refers to her using the last name "Roque," this order also refers to her by the last name "Roque." (*Id.*)

house, two men went inside first and held Cabo at gunpoint. (*Id.*, pp. 221, 224-25.) Gonzalez and two of the other men brought Roque into the house. (*Id.*, p. 224.) The men all wore masks inside the home. (Doc. 14-2, Ex. 1c, p. 333.)

The men demanded $50,000.00 and said that they knew where Roque and Cabo's family members lived. (*Id.*, p. 225.) Roque and Cabo did not have that much cash and told them to take their belongings instead. (*Id.*, p. 226.) The men ransacked the house, taking items such as computers, jewelry, cameras, watches, credit cards, a briefcase, a purse, and some cash. (*Id.*, pp. 227-30.) Roque estimated the total value of the stolen items at $40,000.00. (*Id.*, pp. 229-30.)

The perpetrators tied Cabo up with a rope. (*Id.*, p. 231.) Gonzalez threatened to use a taser on Cabo and Roque and to cut off their fingers with a knife. (*Id.*, pp. 233-36, 264; Doc. 14-2, Ex. 1c, pp. 338-39.) They forced Cabo to make a recorded statement in which he admitted to engaging in fraudulent medical practices. (Doc. 14-2, Ex. 1b, pp. 232-33; Doc. 14-2, Ex. 1c, pp. 341-42.) They threatened that if he did not pay them, they would give the recording to authorities. (*Id.*) The men were all masked while inside the home and Roque did not remember seeing Hernandez in the house. (Doc. 14-2, Ex. 1b, p. 238; Doc. 14-2, Ex. 1c, p. 332-33.) Although Cabo did not see their faces because of the masks, he observed that the tallest, thinnest member of the group was talking more than the others. (Doc. 14-2, Ex. 1c, pp. 332-33, 337.)

After several hours, the men left but told Roque and Cabo that they would call the clinic the next day with directions for paying the money. (Doc. 14-2, Ex. 1b, pp. 238-39; Doc. 14-2, Ex. 1c, pp. 343-44.) They threatened to kill Roque and Cabo if they did not pay and told them not to call the police. (Doc. 14-2, Ex. 1b, p. 239; Doc. 14-2, Ex. 1c, pp. 344.) After the men left and Roque untied Cabo, they contacted police. (Doc. 14-2, Ex. 1b, pp. 243-44.) Police responded to their home that night. (*Id.*, pp. 244-45.)

The next day, police met with Roque and Cabo at the medical clinic. (*Id.*, p. 253.) Cabo received a call, and the caller said he would call back again with directions for dropping off the money. (Doc. 14-2, Ex. 1b, p. 254; Doc. 14-2, Ex. 1c, p. 348.) Cabo recognized the caller's voice as that of the tall, thin man who had been in the house the night before. (Doc. 14-2, Ex. 1c, p. 348.) The man called back and said to go to a shopping center, where a cell phone would be inside a cup near an air conditioning unit. (Doc. 14-2, Ex. 1b, p. 255; Doc. 14-2, Ex. 1c, p. 349.) He told Cabo that they would be watching, and that they would call him on the cell phone with instructions. (*Id.*)

Police surveilled the shopping center and observed Hernandez walking back and forth on a sidewalk. (Doc. 14-2, Ex. 1c, pp. 420-22.) Before any arrests were made, Detective Thomas St. John drove Roque to the shopping center to see if she could identify anyone. (Doc. 14-2, Ex. 1b, p. 256.) Roque saw Hernandez and identified him as the

person who had crashed into her car. (Doc. 14-2, Ex. 1b, pp. 256; Doc. 14-2, Ex. 1c, p. 432.) Roque left the shopping center with police. (Doc. 14-2, Ex. 1b, p. 257.)

Deputy Jose Morales drove Cabo to the shopping center at around 5:40 p.m. (Doc. 14-2, Ex. 1d, pp. 479-80.) Cabo went to the air conditioning unit, picked up the cell phone he saw there, and left a bag filled with paper. (Doc. 14-2, Ex. 1c, pp. 355-36.) The phone rang and Cabo answered; when the caller demanded he take the money to another location, Cabo refused. (Doc. 14-2, Ex. 1c, pp. 359-60; Doc. 14-2, Ex. 1d, pp. 485-86.)

Police observed Hernandez pick up the bag. (*Id.*, p. 433.) After Gonzalez pulled up next to Hernandez in a white vehicle, they began talking. (Doc. 14-2, Ex. 1d, pp. 504-06.) They were both arrested. (*Id.*, pp. 506-07.) Hernandez had in his possession two cell phones and the bag that Cabo left by the air conditioning unit. (Doc. 14-2, Ex. 1c, p. 424; Doc. 14-2, Ex. 1d, pp. 507-08.) Police brought both Roque and Cabo back to the scene. Roque identified Gonzalez as the person who sat next to her in the car and noticed that he was wearing the same pants and shoes as he had the previous night. (Doc. 14-2, Ex. 1b, pp. 257-58.) Cabo recognized Hernandez as someone who had been in the clinic the week before the crimes. (Doc. 14-2, Ex. 1c, pp. 360-61.) Cabo also recognized that Gonzalez was wearing some of the same clothing he had seen the tall, thin perpetrator wear. (*Id.*, pp. 363, 366-67.)

Later, Roque and Cabo received an anonymous letter identifying other people who might have been involved in the crimes. (Doc. 14-2, Ex. 1b, p. 262.) Police investigated the people named in the letter and had the letter processed for fingerprints, but they obtained no information of value. (Doc. 14-2, Ex. 1c, pp. 442-43.)

On the night of the crimes, Roque gave descriptions to the first officer who arrived, Officer Belinda Quinones. (Doc. 14-2, Ex. 1b, p. 245.) Although Roque did not believe herself to be good at estimating height and weight, she tried to do so. (*Id.*, p. 248, 289, 294.) She recalled describing Hernandez as hefty, and stating that she could identify the two men who she saw without masks. (*Id.*, pp. 249-50.) Hernandez called Officer Quinones as a witness at trial. She confirmed that Roque had described the driver who hit her as about 30 to 35 years of age, about 5 feet, 9 inches tall, and about 150 pounds. (Doc. 14-2, Ex. 1d, pp. 554.) According to Officer Herbert Saumell, Hernandez was about 40 years old at the time, was approximately 5 feet, 4 inches tall, and weighed approximately 200 pounds. (Doc. 14-2, Ex. 1c, pp. 400-01.) When Roque talked to Officer Saumell the night of the crimes, she described Hernandez as shorter and heavyset. (*Id.*, p. 392.)

## II.   STANDARD OF REVIEW UNDER SECTION 2254

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief under the AEDPA can be granted only if a petitioner is in custody "in violation of the

Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "The power of the federal courts to grant a writ of habeas corpus setting aside a state prisoner's conviction on a claim that his conviction was obtained in violation of the United States Constitution is strictly circumscribed." *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1093 (11th Cir. 2022).

Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), the phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). This section "defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." *Id.* at 404. First, a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court

decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.

Second, a decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and

defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). But the habeas court is "not limited by the particular justifications the state court provided for its reasons, and [it] may consider additional rationales that support the state court's determination." *Jennings v. Secretary, Fla. Dep't of Corr.*, 55 F.4th 1277, 1292 (11th Cir. 2022). When the relevant state-court decision is not accompanied with reasons for the decision—such as a summary affirmance without discussion—the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. The state may "rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.*

For purposes of § 2254(d)(2), "it is not enough to show that 'reasonable minds reviewing the record might disagree about the finding in question.' " *Brown v. Davenport*, 142 S. Ct. 1510, 1525 (2022) (quotations omitted). "An unreasonable determination of the facts occurs when the direction of the evidence, viewed cumulatively, was too powerful to conclude anything but the petitioners factual claim." *Teasley v. Warden, Macon State Prison*, 978 F.3d 1349, 1355 (11th Cir. 2020) (internal quotation marks and alterations omitted). A state court's findings of fact are presumed correct, and a petitioner can rebut

the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Even where a petitioner succeeds in rebutting the presumption, he must show that the state court's decision is "based on" the incorrect factual determination. *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022). This is because a state court decision may still be reasonable "even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an 'unreasonable determination of the facts' and isn't 'based on' any such determination." *Id.* (quoting *Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203, 1224–25 (11th Cir. 2021) (Newsom, J., concurring)).

In addition to satisfying the deferential standard of federal court review of a state court adjudication, a federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in a federal petition. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A petitioner satisfies this exhaustion requirement if he fairly presents the claim in each appropriate state court and alerts that court to the federal nature of the claim. *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A petitioner shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

## III.   INEFFECTIVE ASSISTANCE OF COUNSEL

Hernandez brings claims for ineffective assistance of trial counsel under the Sixth Amendment. Under the well-known, two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed, he must show both deficient performance by his counsel and prejudice resulting from those errors. *Id.* at 687.

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id.* at 688. A petitioner establishes deficient performance if "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on

claims of ineffective assistance of counsel because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

## IV.   ANALYSIS

### A. Grounds One And Two

In Ground One, Hernandez claims that the State's evidence was insufficient to establish kidnapping of Pedro Cabo. In Ground Two, Hernandez contends that the State's evidence was insufficient to prove that he possessed a firearm. Hernandez does not expressly assert that the alleged lack of evidence resulted in a violation of his federal rights. As his claims raise no federal constitutional challenge to the validity of his sentence, they are not cognizable on federal habeas review. *See Branan v. Booth*, 861 F.2d 1507 (11th Cir. 1988). Even if the Court liberally construes the claims as federal in nature based on Hernandez's argument that the state appellate court's ruling was contrary to or involved an unreasonable application of clearly established federal law, the claims are procedurally defaulted.

When Hernandez challenged the sufficiency of the evidence on direct appeal, he did not cite any federal authorities or claim that his federal rights were violated. (Doc. 14-3, Ex. 2.) A petitioner's failure to alert the state court that his claim presents a question of federal law typically results in a procedural default of the federal issue. *See Preston v. Sec'y,*

14

*Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015) ("The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim."). But while "it is not at all clear that a petitioner can exhaust a federal claim by raising an analogous state claim," it still may be possible to do so in the context of a sufficiency of the evidence claim when the state and federal courts would apply the same standard of review. *Id.* at 459-60.

Even assuming that Hernandez exhausted the federal nature of the sufficiency of the evidence claims, the claims are still defaulted because the state court resolved them by applying an independent and adequate state procedural bar. In Florida, a claim must be preserved for review in the trial court before it may be raised on appeal. *See Young v. State*, 141 So.3d 161, 165 (Fla. 2013) ("A defendant must preserve a claim of insufficiency of the evidence through a timely challenge in the trial court. . . . the motion or objection must be specific in order to preserve the claim for appellate review."); *Tillman v. State*, 471 So.2d 32, 35 (Fla. 1985) ("In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved.")

Hernandez appeared to concede that the claims were not preserved and therefore could only be reviewed for fundamental error. (Doc. 14-3, Ex. 2, pp. 7-8); *see, e.g.*, *H.R. v. State*, 298 So.3d 1217, 1223-24 (Fla. 3d DCA 2020) (stating that "the fundamental

error exception does not permit appellate review of unpreserved error in the State's evidentiary failure to prove the crime/delinquent act unless the evidence failed to establish the commission of *any* crime/delinquent act whatsoever"). And the State argued that the claims were barred as unpreserved and should be rejected on the basis of this procedural bar. (Doc. 14-3, Ex. 3, pp. 10-11, 16.) The state appellate court's silent affirmance is presumed to rest on the procedural bar asserted by the State. "When a state court issues a summary denial on a claim that is procedurally barred and nothing in the disposition discusses the merits of the federal claim, we 'cannot assume that had the [state court] explained its reasoning, it would have reached the merits of [the] claim.'" *Zeigler v. Crosby*, 345 F.3d 1300, 1310 (11th Cir. 2003) (quoting *Kight v. Singletary*, 50 F.3d 1539, 1545 (11th Cir. 1995)). Accordingly, the Eleventh Circuit, "to a point[,] has presumed that when a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default." *Bennett v. Fortner*, 863 F.2d 804, 807 (11th Cir. 1989).

Ordinarily, when a state court disposes of a federal claim on an independent and adequate state procedural rule, the claim is procedurally defaulted on federal habeas review. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991) ("This Court will not review a question of federal law decided by a state court if the decision . . . rests on a state law ground that is independent of the federal question and adequate to support the judgment."). A

16

state court's rejection of a petitioner's federal constitutional claim on state procedural grounds precludes federal review if the state procedural ruling rests on an "independent and adequate" state law ground. *Ferguson v. Sec'y, Dep't of Corr.*, 580 F.3d 1183, 1212 (11th Cir. 2009); *see also Kimbrough v. Sec'y, Fla. Dep't of Corr.*, 809 F. App'x 684, 691-92 (11th Cir. 2020); *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).

A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying on a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion" or in a "manifestly unfair manner." *Judd*, 250 F.3d at 1313 (citing *Card v. Dugger*, 911 F.2d 1494 (11th Cir. 1990)). A rule must be firmly established and regularly followed by state courts to be considered adequate to foreclose review of a federal claim. *Lee v. Kemna*, 534 U.S. 362, 376 (2002).

The rule requiring preservation of issues for appeal is firmly established and regularly followed in Florida courts. As the state court's decision was based on an independent and adequate state law rule that was not intertwined with the merits of the federal constitutional question, Hernandez's federal claims are procedurally defaulted. *See Harris v. Reed*, 489

U.S. 255, 262 (1989). Hernandez does not establish that either the cause and prejudice or the fundamental miscarriage of justice exception applies to overcome the default. Consequently, the claims raised in Grounds One and Two are barred from federal habeas review. *See id.*

### B. Ground Three(A)

Hernandez claims that trial counsel was ineffective for failing to move to suppress Roque's out-of-court identification of him. He contends that the show up procedure was improperly suggestive. Hernandez asserts that Detective St. John, who drove Roque to the shopping center where she identified Hernandez, told her who to identify.

The state court held an evidentiary hearing on this claim. Counsel testified that Hernandez did not ask him to move to suppress the identification. (Doc. 14-4, Ex. 6, p. 587.) Further, counsel testified, he did not believe that he had a good faith basis to move for suppression. (*Id.*, p. 588.) Counsel testified that he had no recollection of Detective St. John allegedly telling Roque whom to identify. (*Id.*, pp. 585-86.) Counsel also testified that he had deposed Roque, and that she was confident she could identify the person from the crash. (*Id.*, p. 584.) On cross-examination, counsel clarified that it was possible Gonzalez's attorney took the deposition. (*Id.*, pp. 598-99.)

Hernandez testified that he asked counsel to move to suppress the out-of-court identification. (*Id.*, p. 549.) Hernandez maintained that police told Roque there was a

18

suspicious person she needed to identify, and that Roque identified him at St. John's suggestion. (*Id.*, pp. 544-46.) Hernandez stated that when Roque was interviewed by Officer Quinones, the first officer to respond after the crimes, Roque gave a description that did not match his physical characteristics. (*Id.*, pp. 547-48.)

The state court found counsel's testimony "highly credible and more credible than that of" Hernandez. (*Id.*, p. 689.) The state court found credible counsel's testimony that Hernandez did not ask him to file a motion to suppress the out-of-court identification. (*Id.*, p. 690.) The state court also found credible counsel's testimony that after reviewing the depositions, police statements, and other evidence, he did not believe he had a good faith basis to move to suppress the identification based on suggestive identification procedures. (*Id.*) The state court concluded that it was a reasonable trial strategy for counsel not to file a motion since he believed he lacked a good faith basis to do so. (*Id.*) The state court found Hernandez's testimony that he asked counsel to file a suppression motion not credible. (*Id.*) The state court concluded that counsel's performance was not deficient. (*Id.*)

The state court's denial of Hernandez's claim was reasonable. Its findings that counsel was credible and that counsel made a strategic decision are findings of fact that are presumed correct. *See Franks v. GDCP Warden*, 975 F.3d 1165, 1176 (11th Cir. 2020) ("The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is

presumptively correct." (quoting *Provenzano v. Singletary*, 148 F.3d 1327, 1330 (11th Cir. 1998))); *Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) (stating that "[t]he factual findings of the state court, including the credibility findings, are presumed to be correct"). Hernandez does not rebut the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Therefore, to show entitlement to relief, Hernandez must demonstrate that counsel's strategic decision was patently unreasonable. *See Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (stating that counsel's strategic decision "will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it" even when the decision "appears to have been unwise in retrospect") (citation omitted); *see also Franks*, 975 F.3d at 1176 ("Because *Strickland* allows for a range of strategic choices by trial counsel, so too is there considerable leeway for state courts to determine the reasonableness of those choices. . . . For Franks to prevail, then, he would have to show that *no* reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct.")

The testimony the state court found credible shows that counsel did not believe he had a good faith basis to file a motion to suppress. Police may use a show up as a method of identification in criminal investigations. *See Johnson v. Dugger*, 817 F.2d 726, 729 (11th Cir. 1987) (stating that "immediate confrontations allow identification before the suspect

20

has altered his appearance and while the witness' memory is still fresh, and permit the quick release of innocent persons").

"[D]ue process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 238-39 (2012); *see also Masse v. Sec'y, Fla. Dep't of Corr.*, 700 F. App'x 890, 894 (11th Cir. 2017) (stating that while show ups have some inherent suggestiveness, they "are not unnecessarily suggestive unless the police aggravate the suggestiveness of the confrontation in some way" (quoting *Johnson*, 817 F.2d at 729)). Thus, an out-of-court identification will be excluded only when law enforcement has acted improperly to obtain it. *See Perry*, 565 U.S. at 233 (holding that "[w]hen no improper law enforcement activity is involved" in obtaining an identification, the reliability of the identification will be tested through means such as counseled post-indictment lineups, cross-examination, jury instructions, and the rules of evidence). Factors a court considers in evaluating the likelihood of misidentification include the witness's opportunity to view the perpetrator during the crime; the witness's degree of attention; the accuracy of the witness's prior description; the witness's level of certainty during the confrontation; and the length of time between the crime and the confrontation. *See Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).

At trial, Roque testified that when Detective St. John took her to the shopping center, she recognized Hernandez as the person who crashed into her car. (Doc. 14-2, Ex. 1b, p. 256.) Detective St. John testified that he drove Roque to the shopping center for the purpose of seeing if she could identify a suspicious person there. (Doc. 14-2, Ex. 1c, p. 432.) But Detective St. John testified that he did not suggest to Roque that a person involved in the crimes would be present. (*Id.*, p. 436.)

Hernandez identifies no information available to counsel before or at trial showing that, as Hernandez asserts, Detective St. John told Roque who to identify. While Hernandez asserts that Roque's initial description to police the night of the crimes did not match him, this matter was addressed at trial. Roque testified that she was poor at estimating characteristics such as height and weight, but tried to do so for police. (Doc. 14-2, Ex. 1b, p. 248.) And counsel cross-examined Roque about the description she gave. (*Id.*, pp. 288-90, 293-94.) Hernandez fails to show that counsel had a meritorious basis to move to suppress the out-of-court identification as unnecessarily suggestive.

Finally, Hernandez contends that the state court's credibility finding was incorrect because trial counsel erroneously asserted that he had taken the deposition of Roque. A copy of the deposition reflects that it was taken by counsel for Gonzalez. (Doc. 20-1, pp. 2-4.) But as addressed, counsel agreed on cross-examination that he might not have conducted the deposition and that a copy of the transcript would clarify the matter. (Doc.

22

14-4, Ex. 6, pp. 598-99.) The state court's credibility finding thus would have encompassed trial counsel's concession that his recollection of taking the deposition might have been mistaken. Hernandez has not rebutted, by clear and convincing evidence, the presumption of correctness afforded to the state court's credibility finding, or established that the state court's order was based on an unreasonable factual determination. Nor does Hernandez show that the state court unreasonably applied *Strickland*. He is not entitled to relief on Ground Three(A).

### C. Ground Three(B)

Hernandez argues that trial counsel was ineffective for failing to move to suppress Roque's in-court identification of him or move for a mistrial. Roque stated on cross-examination that a detective once took a photograph of Hernandez to her job, and showed the photograph to her the day prior "as in evidence." (Doc. 14-2, Ex. 1b, p. 295.) Hernandez asserts that showing his photograph to Roque the day prior to her trial testimony was akin to an uncounseled lineup, and rendered Roque's in-court identification unreliable.

At the evidentiary hearing, counsel testified that he believed showing Roque the photograph was part of standard trial preparation and was not a basis to move for suppression or for a mistrial. (Doc. 14-4, Ex. 6, p. 594.) Counsel also testified that he did not believe that Roque's viewing a photograph the day before trial would have made a

difference in her testimony because she had been to previous court proceedings and therefore had had many opportunities to view Hernandez. (*Id.*) Counsel also noted that he cross-examined Roque about her description of Hernandez and also called Officer Quinones to address the description. (*Id.*, pp. 591-92.) Hernandez testified that, to his belief, viewing the photograph influenced Roque's identification. (*Id.*, pp. 553-56.) He testified that he asked counsel to move to suppress the identification. (*Id.*, p. 553.)

The state court denied this claim, finding trial counsel's testimony to be "highly credible" and more credible than Hernandez's testimony. (*Id.*, p. 693.) The state court did not find credible Hernandez's testimony that he asked counsel to move to suppress the in-court identification, and made the finding that Hernandez did not ask counsel to file a motion. (*Id.*) The state court found credible counsel's testimony that he believed he lacked a good faith basis to file a motion to suppress, a motion in limine, or a motion for a mistrial, "particularly where Ms. Roque had already identified Defendant, had regularly come to court hearings, and the photograph was shown to her for evidence or trial preparation purposes." (*Id.*) The state court further found that it was reasonable trial strategy for counsel to forgo such a motion when he believed he did not have a good faith basis to present it. (*Id.*) The state court determined that Hernandez did not demonstrate that counsel performed deficiently. (*Id.*)

Hernandez does not show that this decision was unreasonable. He does not present clear and convincing evidence to rebut the presumption of correctness afforded to the state court's factual findings that counsel's testimony was credible and that counsel's decision was strategic. *See Franks*, 975 F.3d at 1176; *Rolling*, 438 F.3d at 1301. Hernandez fails to demonstrate that counsel made a patently unreasonable decision not to challenge Roque's in-court identification when he believed he lacked a good faith basis to do so. Hernandez only speculates that Roque's in-court identification of him was influenced by seeing his photograph before trial. This speculation does not establish that trial counsel was ineffective for not moving to exclude the identification. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a petitioner's "unsupported allegations" that are "conclusory in nature and lacking factual substantiation" cannot sustain an ineffective assistance claim).

Hernandez does not show that the state court's decision involved an unreasonable application of *Strickland*. Nor does he show that the decision was based on an unreasonable factual determination. He is not entitled to relief on Ground Three(B).

### D. Ground Three(C)

Hernandez asserts that trial counsel was ineffective for interfering with his right to testify at trial. At the evidentiary hearing, Hernandez stated that he wanted to testify but that counsel told him he should not do so. (Doc. 14-5, Ex. 6b, pp. 1005-06.) He also

testified that the trial court asked his attorney, not him, about testifying. (*Id.*, pp. 1006-07.)

Counsel testified that he has never told a client that the client cannot testify. (*Id.*, pp. 1031-32.) He testified that while he might have given Hernandez a recommendation about whether to testify, he would have told Hernandez that it was his choice. (*Id.*, p. 1032.) Counsel testified that he always discussed the question of testifying with a client before the trial court would inquire about it. (*Id.*, pp. 1032, 1043.)

The state court denied this claim, finding counsel's testimony to be more credible than Hernandez's testimony. (Doc. 14-3, Ex. 6, p. 338.) The state court cited counsel's testimony that he explained to Hernandez that he had the option of testifying and whether to do so was Hernandez's choice. (*Id.*) The state court also stated that the trial court told Hernandez that he had the right to testify and that the decision was not his attorney's to make. (*Id.*, pp. 338-39.) The state court noted that Hernandez told the trial court that he understood. (*Id.*, p. 339.) The state court concluded that Hernandez failed to meet his burden to show that counsel was deficient. (*Id.*)

Hernandez does not show that this decision was unreasonable. Hernandez does not rebut, by clear and convincing evidence, the presumption of correctness attached to the state court's finding that counsel's testimony was credible. *See Rolling*, 438 F.3d at 1301. The testimony that the court found credible shows that counsel addressed the issue of

testifying with Hernandez and might have offered a recommendation about testifying, but did not interfere with Hernandez's right to testify.

The trial transcript also supports the conclusion that Hernandez knew that whether to testify was his choice. The state trial court brought up the issue of testifying near the end of the second day of trial. The trial court informed Hernandez that he had the right to testify or not to testify and explained what providing testimony would entail. (Doc. 14-2, Ex. 1c, pp. 457-58.) The trial court stated that whether to testify was Hernandez's decision, not counsel's decision. (*Id.*, p. 458.) Hernandez stated that he had no questions for the court and that he understood he had the right to testify or not testify. (*Id.*, p. 459.) The next day, after the State rested, the trial court again asked whether Hernandez would testify:

> THE COURT: [ ] The next question is Mr. Hernandez going to testify?
>
> [COUNSEL]: No, he's not.
>
> THE COURT: Mr. Hernandez, is it your decision to not testify?
>
> THE DEFENDANT HERNANDEZ: (Nodding head up and down.)

(Doc. 14-2, Ex. 1d, p. 551.)

Although the first question was directed at counsel, both portions of the transcript support the conclusion that Hernandez was aware that he had the right to testify, that whether to testify was his decision, and that he chose not to testify. Hernandez does not

show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. He is not entitled to relief on Ground Three(C).

### E. Ground Three(D)

Hernandez contends that trial counsel was ineffective for failing to object to the introduction of the anonymous letter sent to Cabo and Roque about other people who might have played a role in the crimes. Detective Craig Henson testified that the letter gave names and addresses of several individuals and ended by stating, "I hope this information will help in bringing all parties involved to justice, not let two take the blame for all." (Doc. 14-2, Ex. 1c, p. 443.) Detective Henson investigated the names in the letter but uncovered no information of value. (*Id.*, pp. 442-43.) Hernandez asserts that the letter could have been challenged "on various grounds including hearsay, testimonial in nature, unfair prejudice, and specifically expressed an opinion of Petitioner's guilt." (Doc. 1, p. 13.)

The state court held an evidentiary hearing on this claim. Counsel testified that he believed evidence of the letter and the investigation into it was admissible and relevant to show that law enforcement fingerprinted the letter and followed every lead received in the case. (Doc. 14-4, Ex. 6, p. 648.) Counsel pointed out that the letter did not mention Hernandez and did not suggest that Hernandez had confessed. (*Id.*, p. 647.) Counsel believed, as a strategic matter, that it was better for the jury to hear the content of the letter than to guess what the letter said and potentially jump to conclusions. (*Id.*, pp. 648-49.)

The state court found counsel's testimony to be "highly credible." (*Id.*, p. 709.) The state court found that counsel made a reasonable strategic decision not to object to the letter's introduction "where he believed that reference to the letter was admissible and relevant, and that it was not prejudicial to Defendant compared to possible speculation by the jury had the letter not been read in its entirety." (*Id.*, pp. 709-10.) The state court concluded that Hernandez failed to show counsel performed deficiently. (*Id.*, p. 710.)

Hernandez does not show that the state court unreasonably denied his claim. He does not rebut, by clear and convincing evidence, the presumption of correctness afforded to the state court's factual findings that counsel was credible and that counsel's decision was strategic. *See Franks*, 975 F.3d at 1176; *Rolling*, 438 F.3d at 1301. Nor does he show that counsel's strategic decision was patently unreasonable. As counsel determined that the evidence about the letter would have been admissible at trial, counsel did not unreasonably decide that it was advantageous for the jury to learn of the letter's contents rather than to speculate about what the letter stated.

Hernandez does not show that the state court's decision involved an unreasonable application of *Strickland*, or that it was based on an unreasonable factual determination. He is not entitled to relief on Ground Three(D).

### F. Ground Three(E)

Hernandez argues that trial counsel was ineffective for failing to advise him of a viable defense. He contends that he was at the home of a person named Jerman Rojas on the night of September 4, 2007, when the offenses occurred. Hernandez asserts that counsel should have informed him of the importance of an alibi defense.

At the evidentiary hearing, counsel testified that he had no recollection of Hernandez telling him about Rojas. (Doc. 14-5, Ex. 6b, pp. 1033-34.) If Hernandez had done so, counsel testified, he would have given the information to his investigator. (*Id.*, p. 1034.) Counsel explained that he discusses with all clients that the State has accused the client of committing an offense on a particular date and time, and that he would expect a client of any competency to inform him if the client had a witness who could place the client somewhere else at that time. (*Id.*, pp. 1034-35, 1044.) Hernandez testified that counsel failed to tell him an alibi would be helpful. (*Id.*, pp. 1009-1010.) Hernandez stated that he did not volunteer information about Rojas because counsel never asked him if he had an alibi and he did not know the law. (*Id.*, pp. 1010, 1017.)

The state court denied this claim, citing counsel's testimony that Hernandez did not inform him of a witness named Jerman Rojas. (Doc. 14-3, Ex. 6, p. 339.) The state court also pointed out that Hernandez did not call Rojas as a witness at the postconviction hearing to establish the content of his prospective testimony. (*Id.*) Because Hernandez did

not present evidence of Rojas's testimony, the state court concluded that Hernandez failed to establish prejudice. (*Id.*, pp. 339-40.)

Hernandez does not show that the state court unreasonably determined that he failed to demonstrate prejudice as a result of counsel's performance. Hernandez has not presented evidence establishing what testimony Rojas would have given. *See Shaw v. United States*, 729 F. App'x 757, 759 (11th Cir. 2018) ("[The Eleventh Circuit has] stated that complaints about uncalled witnesses are not favored, because the presentation of testimony involves trial strategy and 'allegations of what a witness would have testified are largely speculative.' " (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978))); *Streeter v. United States*, 335 F. App'x 859, 864 (11th Cir. 2009) ("In a habeas petition alleging ineffective assistance of counsel, mere speculation that missing witnesses would have been helpful is insufficient to meet the petitioner's burden of proof." (citing *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001))).

Hernandez contends that the state court's decision was unreasonable because counsel filed a pre-trial notice of alibi but later abandoned that defense for a mistaken identity defense. Any pre-trial notice of alibi filed by counsel is not contained in the record before this Court. A copy of the trial court docket shows that two demands for notice of alibi were filed. (Doc. 14-2, Ex. 1, pp. 1 & 3); *see* Fla. R. Crim. P. 3.200 (providing that a defendant must file and serve a notice of intention to claim alibi when the State files a

demand for such a notice). Moreover, even assuming that counsel had filed and withdrawn such a notice, those actions would not show that counsel was ineffective in the light of Hernandez's failure to establish what Rojas's testimony would have been.

Hernandez does not show that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground Three(E).

### G. Ground Three(F)

Hernandez claims that trial counsel was ineffective for failing to move to sever his trial from Gonzalez's trial. He claims that evidence at the joint trial implicating Gonzalez was prejudicial to him. Hernandez believes such evidence would not have been admitted had he been tried separately.

The state court held an evidentiary hearing on Hernandez's claim. Counsel testified that he did not believe any legal basis existed for a severance. (Doc. 14-5, Ex. 6b, pp. 1031, 1039.) Counsel stated that he did not move to sever because the case did not involve a question under *Bruton v. United States*, 391 U.S. 123 (1968), antagonistic defenses, or speedy trial issues. (*Id.*, p. 1031.)[4] Hernandez testified the jury found him guilty by

---

[4] "*Bruton* held that the Confrontation Clause prohibits the use of the confession of a nontestifying criminal defendant in a joint trial if the statement directly inculpates a codefendant, although it may be otherwise admissible against the confessing defendant." *United States v. Hano*, 922 F.3d 1272, 1286 (11th Cir. 2019) (citing *Bruton*, 391 U.S. at 126).

association because of the admission of evidence that implicated Gonzalez. (*Id.*, p. 1003.) When asked to identify the specific evidence, Hernandez stated that evidence showed that Gonzalez organized the robbery, was inside Roque's car, and was the leader of the group. (*Id.*, p. 1005.)

The state court denied Hernandez's claim, finding that he failed to show a motion would have been granted because he "could not point to specifically what evidence was introduced at trial as to his co-Defendant that affected the outcome of his trial." (Doc. 14-3, Ex. 6, p. 337.) The court found trial counsel's testimony to be credible and cited counsel's testimony that he did not believe there was a legal basis to present a severance motion. (*Id.*, pp. 337-38.) The court concluded that Hernandez did not establish either deficient performance or prejudice. (*Id.*, p. 337.)

The state court's decision was reasonable. Hernandez presents no clear and convincing evidence to rebut the presumption of correctness afforded to the state court's finding that counsel was credible. *See Franks*, 975 F.3d at 1176; *Rolling*, 438 F.3d at 1301. The credible testimony before the court showed that counsel did not file a motion because he did not believe any basis existed to do so. As counsel noted, the case did not involve *Bruton* issues, antagonistic defenses, or speedy trial concerns. Further, "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro v. United States*, 506 U.S. 534, 540 (1993). Thus,

there is support for counsel's conclusion that there was no valid basis to file a motion to sever.

Additionally, although Hernandez believed his defense was harmed by evidence of Gonzalez's guilt, as the state court noted, he did not clearly identify which evidence implicating Gonzalez would have been inadmissible had Hernandez been tried separately. Hernandez does not show that the state court unreasonably applied *Strickland* or based its decision on an unreasonable factual determination. He is not entitled to relief on Ground Three(F).

### H. Ground Three(G)

Hernandez argues that trial counsel was ineffective in not obtaining his cell phone records. He claims that the records would have rebutted the State's assertion that his cell phone was implicated in the crime. The State asserted at trial that call histories from cell phones obtained from Hernandez and Gonzalez at the time of their arrests on September 5, 2007, shows that they were in contact with each other between 4:00 p.m. and 6:00 p.m. that day. (Doc. 14-2, Ex. 1d, pp. 508-16.) Hernandez appears to assert that there were additional cell phone records available.

Counsel testified at the evidentiary hearing that he recalled the evidence indicating that Gonzalez, not Hernandez, was on the phone. (Doc. 14-5, Ex. 6b, p. 1035.) Counsel stated he had no recollection of having any need for the records, although he conceded

that, in theory, cell phone records could have "some relevance" if the records "would not connect [Hernandez and Gonzalez] at a certain time." (*Id.*, pp. 1035-36, 1047.) Hernandez did not present any cell phone records at the hearing. (*Id.*, p. 1020.)

In denying this claim, the state court determined that Hernandez failed to show prejudice. (Doc. 14-3, Ex. 6, p. 340.) The state court concluded that because Hernandez did not produce the cell phone records he believes counsel should have obtained, he failed to show how such records could have affected the outcome of the proceeding. (*Id.*) Hernandez does not show that the state court's decision was unreasonable. Without evidence of what the cell phone records would have shown, he cannot establish a reasonable probability of a different outcome at trial had counsel obtained the records. *See Tejada*, 941 F.2d at 1559. As Hernandez does not show that the state court unreasonably applied *Strickland*'s prejudice prong or based its decision on an unreasonable determination of fact, he is not entitled to relief on Ground Three(G).

### I. Ground Three(H)

Hernandez argues that trial counsel was ineffective for not pursuing DNA testing of a water bottle from inside the victims' home. He contends that Roque stated that he drank from the water bottle. Roque testified that one perpetrator drank from a water bottle in the refrigerator. (Doc. 14-2, Ex. 1b, p. 238.) But she did not remember seeing

Hernandez in the house; her identification of him was based on the car crash, when she saw him without a mask. (*Id.*, pp. 238, 250-51.)

The state court held a hearing on this claim. Trial counsel stated that he saw no reason to seek DNA testing, as Roque testified to observing Hernandez at the crash scene, not in the house. (Doc. 14-4, Ex. 6, p. 668.) Hernandez maintained that DNA testing could have proven he was not present. (*Id.*, p. 666.)

In denying this claim, the state court concluded that even if DNA testing had been performed and had shown that Hernandez's DNA was not on the water bottle, that evidence would not prove "that he was not in the home or otherwise involved in the offense. . . . Rather, it would just prove that he did not drink from the water bottle." (*Id.*, p. 715.) The state court noted that the State did not argue that Hernandez drank from the water bottle. (*Id.*) The state court found that Hernandez failed to show prejudice under *Strickland*. (*Id.*)

Hernandez argues that the state court's ruling was objectively unreasonable because the court relied on counsel's testimony to conclude there was no reason to test the water bottle. The state court's consideration of counsel's testimony was not unreasonable. And as the state court concluded, a negative DNA test would merely confirm that Hernandez did not drink from the bottle. Hernandez fails to show a reasonable probability that such evidence would have changed the outcome of trial in the light of Roque's testimony that

36

she did not recall seeing Hernandez inside her house. The state court did not unreasonably apply *Strickland* or unreasonably determine the facts in denying Hernandez's claim. He is not entitled to relief on Ground Three(H).

## V.   CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA, Hernandez must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Hernandez has not made the requisite showing. Finally, because Hernandez is not entitled to a COA, he is not entitled to appeal in forma pauperis.

It is therefore **ORDERED** that Hernandez's Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Hernandez and in Respondent's favor and to **CLOSE** this case.

**ORDERED** in Tampa, Florida on March 29, 2023.

Kathryn Kimball Mizelle
United States District Judge